United States District Court
For The District of Connecticut

Michael T. Ferguson,
Plaintiff,

v.

Cynthia Larove, APRN,
Nurse Elizabeth Doe
Health Services Administrator Brown,
UCONN Health Services, individually
and in their official capacities,
Defendants.

Complaint

Jury Trial Demanded

## Initial Complaint

This 42 U.S.C. § 1983 complaint describes the plaintiff's flailing attempts to negotiate the Connecticut Department of Correction's healthcare system, provided through UCONN Services, his attempts to be diagnosed and treated for several serious medical needs, as well as the brazen retaliation plaintiff faced when he attempted to use the officially established processes for appealing and pursuing treatment.

## Statement of Facts

(1) In mid 2017 plaintiff was seen by APRN Cynthia Larove, hereinafter referred to as "Larove." In that meeting plaintiff outlined the several conditions which were causing plaintiff's chronic pain, which include: (a) A painful mass on the right teste; (b) Pain in left and right foot, left knee, hip and back caused by a previously broken calcaneus (heel); (c) Eczyma in both ears and perianal areas; Plaintiff reported that these issues had been ongoing for years;

(1)

(2) Larove inspected, examined and aknowledged all of the aforementioned issues in turn. Nurse Shaw stood outside with the door open while plantiff's teste was examined;

(3) Plaintiff requested that Larove request a urology consult and an ultrasound to diagnose his teste, a podietry consult and orthotics for his heel and a dermatology consult and new meds for his eczyma because the current treatment was inadequate;

(4) Larove told plaintiff that she would submit a podietry request but that plaintiff would need to be seen again for the other issues, but that she would not request a urology or dermatology consult nor a request for new medication. Larove said, "They only give those meds to people who have eczyma on over 90% of their body," and, "They won't approve you to see a urologist, dermatologist or a podietrist;"

(5) Plaintiff insisted that he needed his requests on the record and Larove responded that they would have to wait;

(6) Plaintiff expressed concerns about sterility & Larove aknowledged that it was a real possability if untreated;

(7) Plaintiff explained the pain he experienced daily while walking, washing, exercizing, and disrupting his sleep and requested pain medreation. Larove refused.

(8) Plaintiff asked Larove if these were the kinds of conditions which would get plaintiff moved to another facility. Larove told plaintiff, "Absolutely not," and that plaintiff would only be moved if he needed medical attention on a daily basis that she could not provide;

(2)

(9) The DOC Objective Classification Manual defines a Medical Needs Level 3 as "Inmates need predictive access to nursing care for 16 hours a day, 7 days a week;"

(10) The DOC Objective Classification Manual defines a Medical Level 2 as, "Inmates are not expected to require nursing care on a regular basis, they have some subacute or chronic disease that requires occasional nursing attention, but not on an urgent basis." (Emphasis Added)

(11) On 8/17/17 plaintiff wrote a request asking about the podietry request. On 9/10/17 plaintiff wrote medical highlighting that it has been months since plaintiff requested diagnosis and treatment, that plaintiff was in pain, and noting that he had not been seen to submit the other treatment requests or to address denials in over a month. To both requests Nurse Shaw responded to be patient and that plaintiff was on the list to see the APRN;

(12) In the first week of October plaintiff filed a Health Services Review (HSR), the medical grievance form, outlining his years long struggle to be diagnosed and properly treated for the aforementioned medical issues. Plaintiff requested that he be diagnosed and treated. Plaintiff did not receive a receipt nor a response to that HSR, to date;

(13) In the comming weeks plaintiff was called to submit to a PPD injection test for Tuberculosis. Plaintiff signed a refusal with Nurse Elizabeth Doe, hereinafter referred to as "Doe", citing that plaintiff has a fear of needles. Doe told plaintiff that he would be required to take a day trip to Corrigan for a chest x-ray instead. Plaintiff was content with that

(14) On 10/19/2017 plaintiff was transported, by Corrections Officer

③

Raymond, to Corrigan for a chest x-ray. When plaintiff arrived at the medical unit c/o Raymond was informed that the x-ray technition did not come to work that day. A nurse there then attempted to coerce plaintiff into taking the injection, which plaintiff refused citing the same reasons. That nurse said, "Well you just might end up in a place like this then;"

(15) That same day, after returning to Brooklyn Correctional Institute (BCI), plaintiff was called to medical to see Laroue to sign and address "URC" denials. When plaintiff asked Laroue to file appeal of a denial of services Laroue became exacerbated and raised her voice, saying, "Listen, I don't have time to be filing all of these appeals. If you want to appeal I'll just raise your medical level and have you sent to a jail where they don't coddle sex offenders;"

(16) Plaintiff was confused by this outburst and responded, "Ma'am, please don't ship me out, I am in college classes here. I don't understand. I'm just in pain and trying to get help, so I need my appeals on the record."

(17) To this Laroue responded, "Well what about your PPD?" Plaintiff the situation which had occured earlier and supposed that he would have to go back for another x-ray. At this point Nurse Doe arrived at the door, and Laroue responded "Oh no, if you don't take that shot right now I am going to say that you're a danger to everyone in the facility and have you sent to another jail;" (Emphasis Added)

(18) Plaintiff was sufficiently cowed by this threat of being transferred and relented. Plaintiff was asked by Laroue to follow Doe into the next room to have the injection administered. After the injection plaintiff asked

④

if Larove would be filing his appeals to which she responded, "You can file a grievance, if you want;"

(19) On the way out of medical plaintiff lingered by the door and overheard Doe say to Larove, "Can you think of any other way to get him shipped out?" (Emphasis Added)

(20) On 10/20/2017 between 0520 and 0600 hrs plaintiff submitted an HSR detailing the events of 10/19/17. Plaintiff has not received a receipt nor a response to that HSR, to date;

(21) On 10/20/2017 at 1300 plaintiff was informed that he was transferring to Carl Robinson Correctional Institute (CRCI). Before transferring plaintiff was allowed to see Lieutenant Zator. After explaining the situation Zator told plaintiff that his medical level had been raised from outside the facility and that there was nothing Zator could do to help plaintiff stay at BCI and in college. When plaintiff told Zator about the HSRs Zator informed plaintiff that, in fact, was the person whom retrieved and handled the HSRs;

(22) It is well known that BCI is a highly supervised and protected facility for housing sex offenders. While at CRCI plaintiff experienced harrassment by inmates and staff alike, including staff informing inmates and other staff what plaintiffs charges were which resulted in plaintiff suffering intimidation and mental distress. One incident involved a staff member stealing property from plaintiff which has resulted in pending litigation;

(23) When plaintiff inquired from medical staff at CRCI plaintiff was informed by Cheryl Spano, APRN and Head Nurse, that L              had

authorized plaintiff's level raise and transfer, but that there was no valid medical reason for the plaintiff's medical level to be a 3. Spano lowered plaintiff's medical level that day and plaintiff was transferred back to BCI, three days after the change;

(24) On 12/11/17 plaintiff submitted a request to medical asking to see a Urologist, renew a doctors prescription for ibuprofin and different meds for eczyma;

(25) Plaintiff was seen shortly thereafter by a male nurse who recorded these requests, and said plaintiff would need to see Laroue. Plaintiff explained the issues he had had with Laroue and Doe. He said that he would speak to his supervisor about it.

(26) On 12/20/17 plaintiff submitted an inmate request to Health Services Administrator (HSA) Brown, outlining the aforementioned issues getting medical treatment as well as the conflict of interest with the HSR system at BCI. No response has been forthcoming, to date;

(27) On 1/3/18 at about 1240hrs plaintiff was called to medical and seen by Doe. Plaintiff again outlined his issues and requests and Doe said that she would sign plaintiff up to see Laroue;

(28) That same day between 1300-1330hrs plaintiff was informed that he was being transferred. Warden Robert Martin was touring the unit and plaintiff explained the situation. Martin called Doe, who told Martin that the plaintiff was being transferred because plaintiff needed to be examined by a male and that the doctor, Dr. Wright, had authorized the level raise and transfer in order to reexamine plaintiff. Martin told plaintiff the same;

6

(29) When plaintiff arrived at CRCI the intake nurse, Justin, informed plaintiff and showed plaintiff paperwork that showed that Larove had, in fact, authorized plaintiff's level raise and transfer again, and in corroboration with Doe ___, and that Dr. Wright had not been at CRCI for several weeks and may not be back for several more;

(30) Larove was not working at BCI on that day;

(31) Plaintiff has serious medical needs which a reasonable doctor or patient would find important and worthy of comment or treatment, and which cause substantial and chronic pain. Treating plaintiff's maladies would be fairly low cost and greatly improve plaintiff's quality of life;

(32) Defendant Larove did act with deliberate indifference when she used her position to: a) refuse and fail to make a timely referral to a specialist, especially when she could not make a diagnosis; b) refuse to provide pain medication to plaintiff; c) Deny and delay access to treatment; (Emphasis Added)

(33) Larove had knowledge that failing to treat plaintiff or delaying plaintiff's diagnosis and treatment would prolong plaintiff's conditions and could have unreasonable risk of serious damage to plaintiff's future health;

(34) Larove had knowledge that the rigors of transferring facilities would aggravate plaintiff's conditions and cause further unnecessary and significant pain;

(35) Larove owed a duty to plaintiff as a licensed medical professional to have and use the knowledge, skill and care ordinarily possessed and employed

(7)

by members of the profession in good standing;

(36) Plaintiff submits that any lay person would know that a painful mass on the teste, eczyma, and chronic pain caused by a previously broken heel beg more treatment than Laroue provided;

(37) Laroue committed the tort of malpractice against plaintiff

(38) Laroue committed the tort of retaliation against plaintiff

(39) Defendant Doe actively participated in the retaliatory transfers of plaintiff and committed the tort of retaliation against plaintiff;

(40) Plaintiff submits these supplimental claims to the Honorable Court;

(41) Laroue violated plaintiff's 1st Ammendment rights and 14th Ammendment rights when she retaliated against plaintiff for attempting to access the healthcare appelate system;

(42) Doe violated plaintiffs 1st and 14th Ammendment rights by mishandling plaintiff's HSRs and retaliating against the plaintiff for using that system;

(43) Health Services Administrator Brown was made aware, by plaintiff, of the rights being violated by Doe and the actions Laroue and had taken against plaintiff. However, HSA Brown failed to supervise Laroue and Doe who malicously transferred plaintiff a second time;

(44) UCONN Health services hired and trained staff as well as created

⑧

policy and a culture of denying and disregarding requests for diagnosis and treatment through their "URC", at the expense of plaintiff's health. Denial is the rule for countless inmates, including plaintiff, and treatment is the exception. Plaintiff was not informed of the reasons for denials of requests for treatment. This practice is purposeful so that plaintiff cannot submit a substantial claim to the court implicating UCONN Health;

(45) Plaintiff has been attempting for over three months, through Inmate Legal Assistance Program and on the facility level, to obtain a copy of plaintiff's compleat medical file in order to file a comprehensive claim. ILAP and plaintiff's requests for this information is actively ignored;

## Prayer for Relief

Wherefore the plaintiff seeks relief in the following maner:

(46) Injunctive relief;
(47) Compensatory damages;
(48) Exemplary damages;
(49) Costs of suit, including litigation expenses and reasonable compensation;
(50) Such other and further relief which the Court finds just and equitable;

Respectfully Submitted,

Michael T. Ferguson

(9)