UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MICHAEL T. FERGUSON,
    Plaintiff,

v.

CYNTHIA LAROVE, et al.,
    Defendants.

No. 3:18-cv-103 (VLB)

ORDER

Plaintiff, Michael T. Ferguson, currently confined at Carl Robinson Correctional Institution in Enfield, Connecticut, filed this complaint *pro se* under 42 U.S.C. § 1983 alleging claims of retaliation and deliberate indifference to medical needs. The named defendants are APRN Cynthia Larove, Nurse Elizabeth Doe, Health Services Administrator Brown and UCONN Health Services. He seeks damages and injunctive relief. Plaintiff's complaint was received on January 18, 2018, and his motion to proceed *in forma pauperis* was granted on January 23, 2018. Along with his complaint, Plaintiff has filed motions for temporary restraining order and preliminary injunction.

Under 28 U.S.C. § 1915A (2000), the court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. *Id.* In reviewing a *pro se* complaint, the court must assume the truth of the allegations,

and interpret them liberally to "raise the strongest arguments [they] suggest[]." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Nevertheless, it is well-established that "pro se complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

## I. Allegations

In mid-2017, when Plaintiff was confined at Brooklyn Correctional Institution ("Brooklyn"), he met with defendant Larove and explained that he had suffered from three painful conditions for years: a painful mass on his right teste; pain in both feet, his left knee, hip and back caused by a previously broken heel; and exzyma in both ears and his perianal area. Doc. #1, ¶1. Defendant Larove examined Plaintiff and acknowledged the issues. *Id.*, ¶2. Plaintiff asked Larove to request a urology consult, an ultrasound test to diagnose his teste, a podiatry consult, orthotics for his heel, a dermatology consult, and new eczyma

2

medication. *Id.*, ¶3.

Defendant Larove told Plaintiff she would submit a request for a podiatry consult but that he would have to be seen again to address his other issues. She declined to submit requests for urology or dermatology consults and told Plaintiff that she would not request new eczyma medication because the medication Plaintiff wanted was only prescribed to persons with eczyma on 90% of their bodies. *Id.*, ¶4. When Plaintiff insisted that his requests be placed on the record, defendant Larove declined and told him he would have to wait. *Id.*, ¶5. Defendant Larove acknowledged that sterility was possible if the teste was not treated. *Id.*, ¶6.

Although Plaintiff told defendant Larove that he experienced daily pain while walking, washing and exercising and that the pain disrupted his sleep, she refused to prescribe pain medication. *Id.*, ¶7. Defendant Larove told Plaintiff that his conditions were not the type of conditions that could get him transferred to another correctional facility. *Id.*, ¶8.

On August 17, 2017, Plaintiff submitted a request asking about the podiatry consult. On September 10, 2017, he wrote again, complaining about pain and noting that he had not been seen to submit other treatment requests in over a month. Nurse Shaw responded to the requests, telling Plaintiff that he was on the list to see the APRN and that he must be patient. *Id.*, ¶11. In early October 2017, Plaintiff filed a Health Services Review seeking diagnosis and treatment. He did not receive a receipt or a response. *Id.*, ¶12.

3

Defendant Doe asked Plaintiff to submit to a PPD injection test for tuberculosis. He refused as he is afraid of needles. Defendant Doe told Plaintiff that he would be taken to Corrigan Correctional Institution ("Corrigan") for a chest x-ray. *Id.*, ¶13. On October 19, 2017, Plaintiff was taken to Corrigan. When he arrived in the medical unit, he learned that the x-ray technician had not come to work that day. A nurse asked Plaintiff to take the injection. He refused. *Id.*, ¶14.

Upon his return to Brooklyn, Plaintiff was called to the medical unit to address denials from the Utilization Review Committee. Plaintiff asked defendant Larove to file an appeal. She refused and threatened to raise Plaintiff's medical needs score and send him to another correctional facility. *Id.*, ¶15. Plaintiff asked not to be transferred. *Id.*, ¶16. Defendant Larove told Plaintiff that if he did not submit to the PPD injection immediately, she would have him transferred. *Id.*, ¶17. Plaintiff agreed and defendant Doe administered the injection. Defendant Doe confirmed that defendant Larove would not submit appeals on Plaintiff's behalf. *Id.*, ¶18. When leaving the medical unit, Plaintiff overheard defendant Doe ask defendant Larove if she could think of any other way to have Plaintiff transferred. *Id.*, ¶19.

On October 20, 2017, Plaintiff submitted a Health Services Review describing the events of the previous day. He did not receive a receipt or response. *Id.*, ¶20. Later that day, Plaintiff was told that he was being transferred to Carl Robinson Correctional Institution ("Robinson"). Lieutenant Zator told

Plaintiff that his medical needs score had been raised by someone outside the facility. *Id.*, ¶21. At Robinson, APRN Cheryl Spano told Plaintiff that "L" had authorized the level increase and transfer. She stated that there was no medical need for the transfer. Plaintiff was returned to Brooklyn after three days. *Id.*, ¶23.

On December 11, 2017, Plaintiff submitted a medical request asking to see a urologist, for a renewal of his ibuprofen prescription and for different eczyma medication. *Id.*, ¶24. He was seen by a male nurse who stated that Plaintiff would need to see defendant Larove. When Plaintiff described the issues he had with defendants Larove and Doe, the nurse said he would speak to his supervisor. *Id.*, ¶25.

On December 20, 2017, Plaintiff submitted a request to defendant Brown describing his problems obtaining medical treatment. He has received no response. *Id.*, ¶26. On January 3, 2018, Plaintiff was called to the medical unit. Defendant Doe said she would put Plaintiff on the list to see defendant Larove. *Id.*, ¶27.

Less than an hour later, Plaintiff was told he was being transferred. Plaintiff complained to the warden while he was touring the housing unit. Defendant Doe told the warden that Plaintiff was being transferred because he needed to be examined by a male and that Dr. Wright had authorized a level increase and transfer so he could examine Plaintiff. *Id.*, ¶28. When Plaintiff arrived at Robinson, the intake nurse showed Plaintiff paperwork indicating that the transfer was authorized by defendant Larove. The nurse told Plaintiff that Dr.

5

Wright had not been at Robinson for several weeks and was not scheduled to be back for several weeks more.  *Id.*, ¶29.  Larove was not working the day of the transfer.  *Id.*, ¶30.

## II. Discussion

Plaintiff asserts four federal claims:  defendant Larove retaliated against him for seeking a health care appeal, defendant Doe retaliated against him for using the health services review system, defendant Brown failed to supervise defendants Doe and Larove and prevent his second transfer, and defendant UCONN Health Services created a policy of denying and disregarding requests for diagnosis and treatment.  He asserts a state tort claim for malpractice against defendant Larove and state tort claims for retaliation against defendants Larove and Doe.  Plaintiff also alleges that he has been unable to obtain a copy of his medical file.

### A.   Defendant UCONN Health Services

Plaintiff names as a defendant UCONN Health Services.  Section 1983 provides in part that "[e]very person who … subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured[.]"  42 U.S.C. § 1983.  The state and its agencies, however, are not considered persons within the meaning of section 1983.  *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (state and state agency not persons within the meaning of section

6

1983); *Siminausky v. Starkowski*, No. 3:15-cv-159(VLB), 2016 WL 236208, at * (D. Conn. Jan. 20, 2016) (dismissing claims against UCONN Health Care because UCONN Health Care not a person within meaning of section 1983). As UCONN Health Services is not a person within the meaning of section 1983, the claim against it is dismissed.

B.  Retaliation

Plaintiff contends that defendants Larove and Doe retaliated against him for exercising his First Amendment right to request an appeal of the denial of his request for consultative examination.

To establish a claim for retaliation in contravention of the First Amendment, Plaintiff must demonstrate "(1) protected speech or conduct, (2) adverse action by defendant, and (3) a causal connection between the protected speech and the adverse action." *Bilal v. White*, 494 F. App'x 143, 146 (2d Cir. 2012). Even if Plaintiff presents evidence satisfying each element, the defendants may avoid liability by showing that they "would have disciplined the plaintiff even in the absence of the protected conduct." *Id.* (quoting *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) (internal quotation marks omitted). Because claims of retaliation are easily fabricated, the courts consider such claims with skepticism and require that they be supported by specific facts. Conclusory allegations of retaliatory conduct are not sufficient. *See Dolan v. Connolly,* 794 F.3d 290, 295 (2d Cir. 2015) ("First Amendment retaliation claims brought by prisoners must 'be supported by specific and detailed factual allegations,' not stated 'in whilly

7

conclusory terms.'") (quoting *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)).

Plaintiff alleges that defendants Larove and Doe engineered his transfers in retaliation for his request that defendant Larove appeal the denial of a consultative examination and for submitting Health Services Reviews complaining about her lack of treatment. Submitting Health Services Reviews and appealing denials of treatment are protected conduct. In addition, Plaintiff alleges specific actions and comments by the defendants. At this stage of litigation, the First Amendment retaliation claims will proceed.

Plaintiff also states that he brings state tort claims for retaliation. Research reveals no common law tort for retaliation in Connecticut cases. All retaliation claims are brought under the First Amendment or a particular state statute and generally relate to termination of employment. *See, e.g., Phadnis v. Great Expression Dental Centers of Conn., P.C.*, 153 A.3d 687, 698 (Conn. App. 2017) (retaliation claim under Conn. Gen. Stat. § 46a-51 et seq., the Connecticut Fair Employment Practices Act); *Palmer v. Brook & Whittle Ltd.*, 64 Conn. L. Rptr. 52, 2017 WL 1239646, at *2 (Conn. Super. Ct. Mar. 2, 2017( (statutory cause of action under Conn. Gen. Stat. § 31-51q for damaged against employer for employee discharged or disciplined for exercising First Amendment rights). As Plaintiff has not identified any state statute supporting a claim for retaliation on these facts, any state tort claim is dismissed.

C. <u>Supervisory Liability</u>

Plaintiff asserts a claim for supervisory liability against defendant Brown.

8

To state a claim for supervisory liability, the plaintiff must demonstrate that the defendants (1) actually and directly participated in the alleged constitutional violation; (2) failed to remedy a wrong after being informed of it though a report or appeal; (3) created or approved a policy or custom that sanctioned objectionable conduct that rose to the level of a constitutional violation, or permitted such a policy or custom to continue; (4) were grossly negligent in their supervision of the officers who committed the constitutional violation; or (5) were deliberately indifferent to the plaintiff's rights by failing to act in response to information that unconstitutional acts were occurring.  *See Shaw v. Prindle*, 557 F. App'x 71, 73 (2d Cir. 2014) (citing *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)); *see also Shakir v. Derby Police Dep't*, ___ F. Supp. 3d ___, 2018 WL 306700, at *8 (D. Conn. Jan. 5, 2018) (following *Colon* because, although acknowledging that Supreme Court may have heightened pleading requirements for supervisory liability, Second Circuit has not rejected standard in *Colon*).

Plaintiff alleges that he brought the conduct of defendants Larove and Doe to defendant Brown's attention through his request submitted about two weeks before the second transfer.  Thus, Plaintiff appears to assert his claim under the second or third example for supervisory liability.  His allegations support the inference that defendant Brown was aware of the problems but did not remedy them or sanctioned the objectionable conduct.  This is sufficient at the initial review stage to state a plausible claim for supervisory liability.  *See Grullon v. City of New Haven*, 720 F.3d 133, 141 (2d Cir. 2013) (sending letter to supervisory

9

official sufficient at pleading stage to state plausible claim for supervisory liability).

D.     Medical Diagnosis and Treatment

Plaintiff describes this claim in the complaint as malpractice.  Connecticut law requires that, to bring a claim for medical malpractice against medical professionals, Plaintiff must file with his complaint an opinion letter from a qualified medical professional certifying that there appears to have been medical negligence in the care or treatment of the plaintiff.  *Telkamp v. Vitas Healthcare Corp. Atlantic*, No. 3:15-CV-726(JCH), 2016 WL 777906, at *8 (D. Conn. Feb. 29, 2016) (quoting Conn. Gen. Stat. § 52-190a(a)).  Plaintiff's failure to file the written opinion letter is grounds to dismiss the action.  Conn. Gen. Stat. § 52-190a(c).

This requirement applies whenever the defendants are sued in their capacities as medical professionals, the alleged actions were medical in nature and arose from the relationship between a medical professional and patient, and the alleged actions were related to medical diagnosis and treatment and involved the exercise of medical judgment.  *Id.* (quoting *Jarmie v. Troncale*, 306 Conn. 578, 588 (2012)).  Plaintiff's claim arises from defendant Larove's actions in failing to pursue requests for treatment.  Thus, the requirement applies.

Plaintiff has not filed with his complaint any opinion letters from similar health care professionals that there was medical negligence in the surgical procedure.  Thus, the state law claim is dismissed.

However, the Court liberally construes the allegations as asserting an Eighth Amendment deliberate indifference claim.  The Eighth Amendment forbids deliberate indifference to serious medical needs of prisoners." *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) (internal quotation marks and citation omitted).  To establish a claim for deliberate indifference to a serious medical need, Plaintiff must allege facts demonstrating two elements.

The first element is objective; "the alleged deprivation of adequate medical [or mental health] care must be sufficiently serious."  *Id.* (internal quotation marks omitted).  Under this objective element, a court must determine first, "whether the prisoner was actually deprived of adequate medical [or mental health] care," and second, "whether the inadequacy in medical [or mental health] care is sufficiently serious."  *Salahuddin v. Goord*, 467 F.3d 263, 279–80 (2d Cir. 2006).  Plaintiff alleges that he suffers from constant pain as a result of the mass in his teste and his previously broken heel.  In addition, he alleges that the defendants have not treated these conditions and have denied him pain medication.  Thus, for purposed of this ruling only, the Court will assume that Plaintiff has a serious medical need that satisfies the objective element of the deliberate indifference standard.

The second element is subjective; the defendants "must be subjectively reckless in their denial of medical care."  *Spavone*, 719 F.3d at 138.  The inquiry is whether each defendant "has knowledge that an inmate faces a substantial risk of

serious harm and ... disregards that risk by failing to take reasonable measures to abate the harm." *Lewis v. Swicki*, 629 F. App'x 77, 79 (2d Cir. 2015) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837-38 (1994)) (internal quotation marks omitted). The defendants must have acted or failed to act "while actually aware of a substantial risk that serious inmate harm will result." *Nielsen v. Rabin*, 746 F.3d 58, 63 (2d Cir. 2014) (internal quotation marks omitted).

Plaintiff alleges that defendant Larove refused to see him to treat his conditions, refused to prescribe pain medication, would not request consultative urology and dermatology examinations and would not appeal the denial of a consultative podiatry examination.  He also alleges that she acknowledged serious consequences if the mass in his teste was not treated.  These allegations are sufficient, at this time, to satisfy the subjective element of the deliberate indifference standard.  The deliberate indifference claim will proceed.

### III. Motions for Preliminary Injunctive Relief

Plaintiff has filed a motion for temporary restraining order and a motion for preliminary injunction.  In his motion for temporary restraining order, Plaintiff asks the Court to prevent defendants Lanove and Doe from influencing his medical needs score to effect a transfer and to prevent them from transferring him.  In his motion for preliminary injunction, Plaintiff seeks an order transferring him to Brooklyn Correctional Institution and permitting no other transfers without his consent, directing UCONN Health Services to provide treatment for pain and consultative examinations and to release his medical file to Inmate Legal

**Assistance Program and to him.**

Interim injunctive relief, either a preliminary injunction or temporary restraining order, "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Grand River Enterprise Six Nations Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007) (citation omitted).  The Second Circuit applies the same standards for temporary restraining orders and preliminary injunctions.  *See Holley v. Cournoyer*, No. 3:17-cv-587(VAB), 2018 WL 340025, at *3 (D. Conn. Jan. 9, 2018).

"[D]istrict courts may grant a preliminary injunction where a plaintiff demonstrates 'irreparable harm' and meets one of two related standards: 'either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party.'" *Otoe-Missouria Tribe of Indians v. New York State Dep't of Fin. Servs.,* 769 F.3d 105, 110 (2d Cir. 2014) (quoting *Lynch v. City of N.Y.*, 589 F.3d 94, 98 (2d Cir. 2009) (internal quotation marks omitted)).  "[T]he court's task when granting a preliminary injunction is generally to restore, and preserve, the status quo ante, *i.e.,* the situation that existed between the parties immediately prior to the events that precipitated the dispute."  *Asa v. Pictometry Intern. Corp.*, 757 F. Supp. 2d 238, 243 (W.D.N.Y. 2010).  *See also McCormack v. Hiedeman*, 694 F.3d 1004, 1019 (9th Cir. 2012) (preliminary injunctive relief intended to preserve the status quo until the court can rule on lawsuit's merits).

13

When, however, the moving party seeks mandatory relief "that alters the status quo by commanding some positive act," the burden is higher. *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 406 (2d Cir. 2011) (citing *Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 n.4 (2d Cir. 2010) (internal quotation marks omitted)). Mandatory preliminary injunctive relief "should issue only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief." *Cacchillo,* 638 F.3d at 406 (citing *Citigroup Global Mkts.,* 598 F.3d at 35 n.4) (internal quotation marks omitted)). In these motions, Plaintiff seeks orders directing the defendants' conduct. Thus, he must meet the higher standard.

The district court has wide discretion in determining whether to grant preliminary injunctive relief. *Moore v. Consol. Edison Co. of New York, Inc.*, 409 F.3d 506, 510 (2d Cir. 2005). "In the prison context, a request for injunctive relief must always be viewed with great caution so as not to immerse the federal judiciary in the management of state prisons." *Fisher v. Goord,* 981 F. Supp. 140, 167 (W.D.N.Y. 1997). Allegations of irreparable harm or claims of a likelihood of success on the merits must be substantiated with evidence in admissible form. *See Girard v. Hickey*, 2016 WL 915253, at *7 (N.D.N.Y. Mar. 4, 2016) (citing *Ivy Mar Co. v. C.R. Seasons Ltd.*, 907 F. Supp. 561 (E.D.N.Y. 1995) ("[B]are allegations, without more, are insufficient for the issuance of a preliminary injunction.") *and Hancock v. Essential Res., Inc.*, 792 F. Supp. 924, 928 (S.D.N.Y. 1992)

14

("Preliminary injunctive relief cannot rest on mere hypotheticals.")).

In his motion for temporary restraining order, Plaintiff seeks orders preventing defendants Lanove and Doe from altering his medical needs score or transferring him. Defendants Lanove and Doe provided medical care for Plaintiff while he was confined at Brooklyn. He now is confined at Robinson. Plaintiff provides no evidence in support of his motion to demonstrate that either defendant has access to his medical records since his transfer or that they can effect his transfer while he is confined at a different correctional facility. Thus, Plaintiff has not shown that he will suffer irreparable harm should the motion for temporary restraining order be denied or demonstrated a likelihood of success on the merits. In addition, as discussed below, Plaintiff has no constitutional right to be housed in any particular correctional facility.

In the motion for preliminary injunction, Plaintiff seeks an order that he be returned to Brooklyn and not transferred again without his consent. Plaintiff states that at Robinson he is harassed by inmates and staff because of his crimes and his college schedule has been interrupted. Inmates have no constitutional right to be housed in any particular correctional facility, regardless whether the conditions in one facility are harsher than in another. *See Andrews v. Semple*, No. 3:17-cv-1233(SRU), 2017 WL 5606740, at *4 (D. Conn. Nov. 21, 2017) (no constitutional right to be housed in any particular correctional facility) (citing *Olim v. Wakinekona*, 461 U.S. 238, 248 (1983)). In addition, although the Second Circuit has not addressed this issue, other circuits have held that inmates have

15

no constitutional right to a secondary education. *See Whitehouse v. Johnson*, No. 1:10cv1175(CMH/JFA), 2011 WL 5843622, at * 3 (E.D. Va. Nov. 18, 2011) (citing cases). The motions are denied with regard to the requests for and against transfer.

Plaintiff seeks an order for immediate medical treatment. As explained above, allegations of irreparable harm or claims of a likelihood of success on the merits in support of a motion for preliminary injunctive relief must be substantiated with evidence in admissible form. Plaintiff has submitted no evidence in support of his motion. Accordingly, this request is denied without prejudice.

Finally, Plaintiff seeks an order that he be provided a copy of his medical file. The document is more appropriately sought through the discovery process. *See* Fed. R. Civ. P. 34 (requests for production of documents). Accordingly, this request is denied.

## CONCLUSION

The state law tort claims and all claims against UCONN Health Services are DISMISSED pursuant to 28 U.S.C. § 1915A(b)(1). The case will proceed on the First Amendment retaliation claims against defendants Lanove and Doe, the supervisory liability claim against defendant Brown, and the Eighth Amendment deliberate indifference claim against defendant Lanove.

Plaintiff's motion for temporary restraining order [ECF No. 3] is DENIED. His motion for preliminary injunction [ECF No. 4] is DENIED as to the request for

16

**transfer and a copy of his medical file and DENIED without prejudice as to the request for medical treatment.**

In accordance with the foregoing analysis, the Court enters the following orders:

(1)     The Clerk shall verify the current work addresses for defendants APRN Cynthia Lanove, Nurse Elizabeth Doe at Brooklyn Correctional Institution, and Health Services Administrator Brown at Brooklyn Correctional Institution, with the Department of Correction Office of Legal Affairs, mail waiver of service of process request packets containing the Complaint to the defendants within twenty-one (21) days of this Order, and report to the court on the status of the waiver request on the thirty-fifth (35) day after mailing.  If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshal Service on him or her in individual capacity and the defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(2)     The Clerk shall prepare a summons form and send an official capacity service packet to the U.S. Marshal Service. The U.S. Marshal is directed to effect service of the complaint on defendants Lanove, Doe and Brown in their official capacities at the Office of the Attorney General, 55 Elm Street, Hartford, CT 06141, within twenty-one (21) days from the date of this order and to file a return of service within thirty (30) days from the date of this order.

(3) The Clerk shall send written notice to Plaintiff of the status of this action, along with a copy of this Order.

(4) The Clerk shall send a courtesy copy of the Complaint and this Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(5) The defendants shall file their response to the complaint, either an answer or motion to dismiss, within sixty (60) days from the date the waiver forms are sent. If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claim recited above. They also may include any and all additional defenses permitted by the Federal Rules.

(6) Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within seven months (210 days) from the date of this order. Discovery requests need not be filed with the court.

(7) All motions for summary judgment shall be filed within eight months (240 days) from the date of this order.

(8) Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(9) If plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that plaintiff MUST notify the court. Failure to do so can result in the dismissal of the case. Plaintiff must give notice

of a new address even if he is incarcerated.  Plaintiff should write **PLEASE NOTE MY NEW ADDRESS** on the notice.  It is not enough to just put the new address on a letter without indicating that it is a new address.  If plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address.  Plaintiff should also notify the defendant or the attorney for the defendant of his new address.

**(10)** Plaintiff shall utilize the Prisoner Efiling Program when filing documents with the court.

**SO ORDERED** at Hartford, Connecticut, this 6th day of February 2018.

_____
**Vanessa L. Bryant
United States District Judge**